**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **ELDER NAIN CHAVEZ-CARRANZA** | **CIVIL ACTION NO. 26-1642** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **ELEAZAR GARCIA, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Petitioner Elder Nain Chavez-Carranza,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 10]. For reasons that follow, the Court should grant the petition in part as described below.

## Background

Petitioner is a citizen of Honduras. "[He] is an eighteen-year-old Honduran national with no criminal history who has resided in the United States since entering in March 2022 as an unaccompanied child ('UAC'). At the time of his entry, he was fourteen years old and was formally designated as a UAC by the Office of Refugee Resettlement ('ORR') because he entered the country without a parent or legal guardian present. To date, that designation has never been rescinded." [doc. # 1, p. 2].

[1] Petitioner's "A Number" is 240-194-905.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On April 3, 2022, the ORR released Petitioner to the custody of a sponsor "after the agency determined that he posed neither a danger to the community nor a risk of flight." [doc. #s 1, p. 2; 1-1]. "He fully complied with all conditions of his release and remained in the community since then." [doc. # 1, p. 7].

"On May 24, 2022, [DHS] issued a Notice to Appear ('NTA') charging Petitioner with removability under INA § 212(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. The Petitioner continued to diligently appear in court for his case." [doc. # 1, p. 7].

"On September 8, 2025, Petitioner was granted Special Immigrant Juvenile Status ('SIJS')." [doc. #s 1, p. 7; 1-2]. "In connection with his SIJS approval, Petitioner was assigned a priority date of March 24, 2025 – meaning that he cannot apply to adjust status to a Lawful Permanent Resident today, but he will be able to in the foreseeable future, assuming he is not removed from the United States." [doc. # 1, p. 7].

"On December 30, 2025, the Eleventh-grade-high-school-student Petitioner was stopped by the Alabama State Patrol for speeding. The Highway Patrol Officer called Immigration and Customs Enforcement immediately. ICE officers appeared at the scene [and] took custody of Mr. Chavez Carranza." [doc. # 1, p. 3]. "Petitioner has remained detained since that date[.]" *Id.* Petitioner maintains: "[His] continued detention has prevented him from attending school and caused significant harm to him and his family. His prolonged separation from his family and community support network has caused substantial economic, emotional, and psychological hardship." *Id.* at 8.

On February 10, 2026, an immigration judge ordered Petitioner removed to Honduras. [doc. # 1-5]. Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"); his appeal is pending. [doc. # 1-6].

Petitioner filed this proceeding on May 19, 2026. [doc. # 1]. According to Petitioner: "This Petition challenges Petitioner's continued detention in the absence of any meaningful opportunity to contest its necessity. His detention violates the Due Process Clause of the Fifth Amendment, which requires, at a minimum, a meaningful hearing before a neutral adjudicator. The government cannot lawfully re-detain Petitioner absent a showing of materially changed circumstances, and it has no legitimate interest in his continued detention where he has already been determined not to pose a danger to the community or a risk of flight." *Id.* at 3.

Petitioner also claims he "was arrested without a warrant and without probable cause . . . ." [doc. # 1, p. 3].

Respondents opposed the petition on August 7, 2026. [doc. # 9]. Petitioner filed a reply on August 12, 2026. [doc. # 10].

**Law and Analysis**

Petitioner claims that mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2) is incompatible with the TVPRA, which is codified at 8 U.S.C. § 1232. [doc. # 1, pp. 18-19, 26].

Petitioner argues:

> 106. Respondents claim that Petitioner is mandatorily detained under 8 U.S.C. § 1225(b)(2)(A). But this statute does not apply to Petitioner who was previously released from custody as an unaccompanied child and has resided in this country for years.
>
> 107. First, an unaccompanied child who entered the United States and was released from government custody to a guardian years ago also cannot not be detained under § 1225(b)(2)(A). An unaccompanied child's initial detention is

> governed by the TVPRA, which requires unaccompanied children – even those who turn 18 and age out of ORR custody – to be placed in the "least restrictive setting available." 8 U.S.C. § 1232(c)(2)(B). This is entirely inconsistent with mandatory detention under 8 U.S.C. § 1225(b)(2)(A). So is the fact of a released unaccompanied child spending years building a life in the United States before being re-detained in the interior. See, e.g., *Cruz Zafra v. Noem*, No. 25-00541, 2025 WL 3239526 (W.D. Tex. Nov. 20, 2025), where the court ordered a bond hearing within five days; the Petitioner in this case had deferred action but reasoning did not rely on that element in concluding that 1225(b)(2) as applied to the petitioner violated due process.
>
> 108. The decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, — F.4th —, 2026 WL 323330 (5th Cir. Feb. 6, 2026) has drastically changed who is considered bond eligible in this circuit, however the analysis of individuals who entered as unaccompanied children and were then later released by ORR, has not changed.
>
> 109. Accordingly, Petitioner's current detention under 8 U.S.C. § 1225(b)(2)(A)— without access to a bond hearing as required by § 1226(a)— violates both the INA and Petitioner's procedural due process rights. As this renders his detention unlawful from its inception, he should be released.

[doc. # 1, pp. 26-27].

The Government disagrees, arguing that under *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), Petitioner is detained under Section 1225 and is not entitled to a bond hearing or release. [doc. # 9, p. 3].

Petitioner replies:

> *Buenrostro-Mendez* resolved the statutory relationship between 8 U.S.C. §§ 1225(b)(2)(A) and 1226(a); it did not involve a former UAC released through the TVPRA framework, and it did not eliminate constitutional review of civil detention.
>
> . . . .
>
> Congress created a distinct statutory regime for UACs. See 8 U.S.C. § 1232. That regime requires HHS/ORR to manage their care and custody and to place them in the least restrictive setting appropriate to the child's circumstances. 8 U.S.C. § 1232(c)(2). Before release, the Government considers safety, danger, and flight risk. Respondents' Response does not meaningfully address § 1232 or explain how *Buenrostro-Mendez*, which did not involve that framework,

> resolves the detention of a former UAC whom the Government previously released.

[doc. # 10, p. 2].

The undersigned agrees with Petitioner that 8 U.S.C. § 1232 governs his detention.

Section 1232(c)(2)(A)-(B) states in relevant part:

> (A) Subject to section 279(b)(2) of Title 6, an unaccompanied alien child in the custody of the Secretary of Health and Human Services shall be promptly placed in the least restrictive setting that is in the best interest of the child.
>
> . . . .
>
> (B) If a minor described in subparagraph (A) reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight. Such aliens shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home.

With respect to subparagraph (B) above, Respondents do not dispute that Petitioner was a minor "described in subparagraph (A)" who "reache[d] 18 years of age" and was "transferred to the custody of the Secretary of Homeland Security[.]" Accordingly, the Secretary "*shall* consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." *See id.* (emphasis added). *See Palacios v. Rice*, No. 1:26-CV-01134 SEC P, 2026 WL 1980865, at *1 (W.D. La. July 8, 2026).

"Courts across the country, when faced with this question, concur that Section 1225(b)(2)(A) and Section 1232(c)(2)(B) establish 'mutually exclusive' detention schemes." *Marroquin Alvarez v. Genalo*, No. 26-CV-02250 (JAV), 2026 WL 1206212, at *6 (S.D.N.Y. May 4, 2026) (citing cases); *see also P.A.H.E. v. Noem*, No. 26-CV-1164 (DJC) (JDP), 2026 WL 451662, at *1-2 (E.D. Cal. Feb. 17, 2026) ("These statutes are thus plainly incompatible as one

mandates detention while the other requires placement in the least restrictive setting and contemplates placement in a variety of release programs.”).

Section 1232(c)(2) controls because it is a more specific statute and inconsistent with Section 1225(b). *See U.S. v. Lewis*, 211 F.3d 932, 934 (5th Cir. 2000) (finding that where a more specific statute conflicts with a more general statute, the more specific statute controls); *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) (“[I]t is a basic principle of statutory construction that a specific statute . . . controls over a general provision . . . particularly when the two are interrelated and closely positioned.”); *accord RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645-46 (2012).

Further, *Buenrostro-Mendez* did not address the issue at bar (namely, noncitizens who entered the United States as unaccompanied minors). *Buenrostro-Mendez*, 166 F.4th at 494.

The Court should order the Secretary of Homeland Security to consider placing Petitioner in the least restrictive setting available after taking into account Petitioner’s danger to self, danger to the community, and risk of flight, if any. 8 U.S.C. 1232(c)(2)(B). In addition, Petitioner is eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on his need for supervision, which may include placing him with an individual or an organizational sponsor, or in a supervised group home. *Id.*

## **Recommendation**[3]

For the reasons above, **IT IS RECOMMENDED** that Petitioner Elder Nain Chavez Carranza’s petition be **GRANTED IN PART AND DENIED IN PART**. To the extent he seeks relief under 8 U.S.C. § 1232(c)(2), his petition is **GRANTED**: (I) the Secretary of Homeland Security shall, within **ten (10) days**, conduct a hearing and consider Petitioner’s placement in the

[3] The undersigned finds no need to address any claim or request for relief not addressed herein.

least restrictive setting available after taking into account any danger to self, danger to the community, and risk of flight; and (II) Petitioner shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on any need for supervision, which may include placement of Petitioner with an individual or an organizational sponsor, or in a supervised group home. Respondents shall provide Petitioner adequate notice of the hearing. The parties shall file a joint status report within 48 hours after the hearing, confirming that the hearing was conducted and informing the Court of the result.

**IT IS FURTHER RECOMMENDED** that, if the Secretary of Homeland Security does not provide the relief above within ten (10) days, Respondents shall release Petitioner from custody in accordance only with any terms and conditions of his prior release, without any additional bond requirements or new conditions.

**IT IS FURTHER RECOMMENDED** that to the extent Petitioner seeks other relief not granted above, his petition is **DENIED AND DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the**

**legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 17th day of August, 2026.

Kayla Dye McClusky
United States Magistrate Judge